UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
LAVERNE WILLIAMS,

Petitioner,

-against-

WILLIAM CONNOLLY, Superintendent
Fishkill Correctional Facility, et al.,

Respondent.

---------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

10 Civ. 3075 (KMK)(GAY)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

Petitioner Laverne Williams ("petitioner" or "Williams") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Pet."). Petitioner challenges his judgment of conviction, upon a jury verdict, for the crimes of burglary in the first degree (four counts), robbery in the first degree (four counts), and robbery in the second degree (three counts). For the reasons set forth below, I respectfully recommend that the Court deny the petition in its entirety.

## I. PROCEDURAL HISTORY

Petitioner, co-defendant Jeffery Watkins ("Watkins"), and a third individual were indicted for the following crimes: (1) class B felony of burglary in the first degree (one count); (2) class B felony of armed burglary in the first degree (one count); (3) class B felony of robbery in the first degree (three counts); (4) class B felony of armed robbery in the first degree (three counts); (5) class C felony of robbery in the second degree (three counts); and (6) class B felony of criminal use of a firearm in the first degree (three

NOT Copies mailed to petitioner 7/1/13
Chambers of Judge Yanthis
PAROLED. NO CONTACT INFORMATION.

counts). Respondent's Affidavit in Answer to a Petition for a Writ of Habeas Corpus ("Resp't Aff."), at ¶ 3. These indictments stem from a March 29, 2001 incident that began at 531 Albany Post Road, in the Town of Hyde Park, New York and ended at Tubman Terrace, in the City of Poughkeepsie, New York ("Tubman Terrace"). Id.

On March 29, 2001, Ms. Kristina Reid ("Reid"), her uncle Mr. Scott Blauvelt ("Blauvelt"), and her boyfriend Mr. Antwaine Hamiel ("Hamiel") were in Reid and Hamiel's apartment in Hyde Park, NY ("the apartment"), when they heard noises coming from the apartment's screen door. Resp't Aff., Exh. 27 at 6[1]. Hamiel asked Reid to check who was at the door. Id. While at the door, Reid heard voices coming from outside but could not understand what was being said. Id. As soon as she opened the door, three individuals pushed the door open. Id. One of the intruders put a gun to her face, stepped on her foot, and screamed at her to lie down. Id. One of the intruders took Blauvelt to the kitchen while the third intruder was yelling at Hamiel. Id. at 7. They repeatedly asked about money. Id. One of the men noticed a safe in the bedroom. Id. The man pointed a gun at Hamiel and stated that he would shoot Hamiel if he did not give him the money and keys to the safe. Id. After searching through the apartment, one of the men found the keys to the safe. Id. at 8. The intruders ripped the phone from the wall, picked up the safe, and left the apartment. Id. at 7. The safe contained $2,300. Id. They also left with a set of keys to the apartment, Blauvelt's cell phone, two 2-way pagers, an antique shotgun, and $10 from Reid's wallet. Id. at 9.

After the intruders left, Hamiel and Blauvelt exited the apartment. Id. at 16. Hamiel observed the brake lights of a vehicle on the street go off. Id. He and Blauvelt

[1] Hereinafter, all citations to "Exh. __," unless otherwise noted, refer to exhibits attached to Respondent's Affidavit in Answer to a Petition for a Writ of Habeas Corpus.

entered into Blauvelt's truck in an attempt to follow the intruders. Id. Upon driving out to the street, they observed a Chevrolet Suburban truck ("the suburban") awaiting the passage of traffic prior to turning onto Route 9. Id. After the suburban turned onto Route 9, Hamiel and Blauvelt turned onto Route 9 and followed it. Id. They turned on various streets before the suburban passed them; traveling in the opposite direction. Blauvelt turned his truck and followed the suburban. Id. The chase ended at the top entrance of Tubman Terrace. Id. After the suburban came to a stop, the front and back seats passengers of the suburban exited the vehicle with guns pointed at Hamiel and Blauvelt. Id. at 18. Blauvelt drove to the lower entrance of Tubman Terrace. Id. Blauvelt flagged down an ambulance driver and asked the driver to contact the police. Id. at 18 -19. While Blauvelt and Hamiel awaited the arrival of the police officers, one of the men exited the suburban and walked away. Id. at 19.

The City Police arrived and handcuffed petitioner and Watkins, the men in the suburban. Subsequently, Blauvelt drove up to the officers, stopped, and identified himself. Id. at 25. Blauvelt later testified that he saw a man dressed in green driving the suburban at the top of Tubman Terrace. Exh. 12, Exh. A at 45; Exh. 27 at 25, 26-27. He saw the police remove the man dressed in green from the driver's seat. Exh. 27 at 25. The man in green handcuffed by the police was the man who had been driving the suburb at the top of Tubman Terrace when the other men approached him and Hamiel with guns. Id. The men arrested by the police were wearing the same clothes as the intruders. Id. at 49-54.

After petitioner and Watkins' arraignment, petitioner's attorney submitted a pre-trial omnibus motion seeking various forms of relief, including dismissal of the indictment

and severance. Exh. 3. By Decision and Order dated June 28, 2001, the Duchess County Court (Hayes, J.) denied petitioner's motion to dismiss the indictment and motion to server. Exh. 8.

Petitioner and Watkins' jury trial commenced on October 1, 2001. Exh. 12 at ¶ 3. Separate counsels represented petitioner and Watkins. The trial concluded on October 24, 2001. Id. At the conclusion of the trial, petitioner was convicted on eleven of the fourteen charges in the indictment. Resp't Aff. at ¶ 9. Subsequently, petitioner moved to set aside the verdict, asserting, among other things, that the prosecutor failed to provide a pre-trial notice concerning identification evidence and that the trial court erred in denying his applications for a separate trial. Exh. 11. By Decision and Order dated February 13, 2001, the County Court denied petitioner's motion. Exh. 14.

The prosecution moved to have petitioner sentenced as a second violent felony offender; arguing that on May 7, 1992, petitioner was previously convicted of a class B felony of robbery in the first degree. Exh. 15. On March 18, 2002, the County Court sentenced petitioner, as a second violent felony offender, to determinate concurrent terms of fourteen years of imprisonment on each of the eleven counts. Resp't Aff. at ¶ 13. Petitioner appealed to the New York State Supreme Court, Appellate Division, Second Department. Id. at ¶ 14.

In October 2002, prior to perfecting his appeal, petitioner filed a *pro se* motion to vacate his judgment of conviction pursuant to N.Y.C.P.L. § 440.10. Exh. 16. Petitioner argued that the trial court lacked subject matter jurisdiction to try him. Id. By Decision and Order dated January 7, 2003, the Duchess County Court (Hayes, J.) denied petitioner's motion. Exh. 19.

Petitioner sought leave to appeal the denial of his motion. By Decision and Order dated June 3, 2003, the Appellate Division, Second Department, denied petitioner leave to appeal. Exh. 20.

In 2005, prior to perfecting his appeal, petitioner filed a second CPL § 440.10 motion to vacate his judgment of conviction. Exh. 21. Petitioner argued: (1) improper and prejudicial conduct not appearing in the record during trial resulting in the judgment, which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom; (2) new evidence has been discovered since the entry of a judgment based on a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant, provided that a motion based upon such grounds must be made with due diligence after the discovery of such alleged new evidence; and (3) his judgment of conviction was obtained in violation of his right under the Constitution of the State of New York or the United States. Exh. 21.

By Decision and Order dated June 20, 2006, the County Court (Hayes, J.) denied petitioner's second CPL § 440.10 motion. Exh. 24. Petitioner sought leave to appeal the denial of his motion. By Decision and Order dated October 24, 2006, the Appellate Division, Second Department, denied petitioner leave to appeal. Exh. 20.

Subsequently, petitioner perfected the appeal of his judgment of conviction to the Appellate Division, Second Department. On appeal, petitioner raised the following grounds: (1) the trial evidence was tainted because of the admission of an identification, which should have been subject to a suppression hearing; (2) The trial evidence was

insufficient to sustain a conviction and the verdict was against the weight of the evidence; and (3) he was denied his constitutional right to a fair trial. Exh. 26.

By Decision and Order dated January 20, 2009, the Appellate Division affirmed petitioner's conviction. Exh. 28. Petitioner sought leave to appeal the affirmation of his conviction to the New York State Court of Appeals. By Certificate dated June 30, 2009, the Court of Appeals denied petitioner leave to appeal. See People v. Williams, 12 N.Y.3d 922, 912 N.E.2d 1084, 884 N.Y.S.2d 703 (June 30, 2009).

Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court.

In April 2010, Williams filed a petition for a writ of habeas corpus in this Court. Docket entry ("Dkt.") #1. Williams' petition challenges his conviction on the same grounds as his appeal to the Second Department and his second CPL § 440.10 motion. Specifically, petitioner alleges: (1) that the trial evidence was tainted because of the admission of an identification, which should have been subject to a suppression hearing; (2) The trial evidence was insufficient to sustain a conviction and the verdict was against the weight of the evidence; (3) he was denied his constitutional right to a fair trial; (4) improper and prejudicial conduct not appearing in the record during trial resulting in the judgment, which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom; (5) new evidence has been discovered since the entry of a judgment based on a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant, provided that a motion

based upon such grounds must be made with due diligence after the discovery of such alleged new evidence; and (6) his judgment of conviction was obtained in violation of his right under the Constitution of the State of New York or the United States.

For the reasons set forth below, I respectfully recommend that the petition be denied in its entirety.

## II. STANDARD OF REVIEW

### A. AEDPA Standard of Review

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). Subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court of the United States]

and nevertheless arrives at a result different from [Supreme Court of the United States] precedent." Williams v. Taylor, 529 U.S. 362, 405 (2000).

Under § 2254(d)(1)'s "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Finally, under AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. §2254(e)(1). The petitioner must rebut this presumption by "clear and convincing evidence." Id.

## III. DISCUSSION

### A. Procedural Bar

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground. This is so unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

However, a procedural default does not bar habeas review of a federal claim unless the last state court rendering judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). Further, the Second Circuit has held that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

(i) The Claims of Improper And Prejudicial Conduct Not Appearing in The Record And Judgment Obtained in Violation of Petitioner's Right

As his fourth and sixth grounds for seeking habeas relief, petitioner alleges that "improper and prejudicial conduct not appearing in the record during trial resulting in the judgment, which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom"; and that the judgment of conviction was obtained in violation of his right under the Constitution of the State of New York or the United States. Pet. at 10-11. Petitioner previously raised these grounds in his second CPL § 440.10 motion.

The trial court denied petitioner's second CPL §440.10 motion pursuant to CPL § 440.10 (3)(c) and § 440.10 (2)(b) on procedural grounds. Pursuant to CPL § 440.10 (3)(c), a court may deny a CPL § 440.10 motion to vacate if the motion is based upon a claim the defendant could have raised in a prior CPL § 440.10 motion, but unjustifiably failed to do so. See CPL § 440.10(3)(c) ("[T]he court may deny a motion to vacate a judgment when ... [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion

but did not do so."); Steward v. Graham, No. 01-cv-0569, 2008 WL 2128172, at *6-8 (N.D.N.Y. May 19, 2008). Pursuant to CPL § 440.10 (2)(b), "a court must deny a post judgment motion to vacate a conviction when the judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal." See CPL § 440.10(2)(b).

In denying petitioner's motion, the court stated that all of the facts regarding petitioner's improper and prejudicial conduct and the violation of his rights claims appear in the records of the proceedings. Furthermore, the court stated that petitioner was aware of the facts, upon which he bases his claims, at the time of his first CPL § 440.10 motion; and was in the position to raise them but failed to do so. Moreover, at the time of his second CPL § 440.10 motion, petitioner had not perfected the appeal of his judgment of conviction to the Appellate Division, Second Department. Petitioner, nonetheless, failed to raise these claims on appeal. Thus, the petitioner's claims were procedurally barred based upon CPL § 440.10(3)(c) and § 440.10(2)(b).

There are adequate and independent findings by the state court that petitioner procedurally defaulted on these claims. Therefore, habeas review of the claims are foreclosed unless petitioner can demonstrate in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Petitioner, however, has not attempted to show cause or prejudice. In addition, the Court finds that the failure to address the merits of petitioner's claims would not result in a fundamental miscarriage of justice. In any event, the record

evidence shows that petitioner possessed the necessary information at the time he filed his first § 440.10 motion. See Exh. 24 at 4-7[2].

Accordingly, I respectfully recommend that petitioner's allegations are procedurally barred from consideration by this Court and should be dismissed.

B. Petitioner's Remaining Claims

(i) Claim of Tainted Trial Evidence

Petitioner argues that the trial evidence in his case, namely the admission of identification testimony by Blauvelt, was tainted because it was not subject to a suppression hearing. In support of this argument, petitioner argues that Blauvelt identified him near the scene of the incident; and that the prosecution did not serve him with the notice pursuant to N.Y.C.P.L. § 710.30(1)(b). Petitioner further argues that the trial court erred in not striking Blauvelt's identification testimony; the Second Department incorrectly denied his appeal; the trial court erred in not granting his motion for a mistrial after the jury was exposed to Blauvelt's testimony; and the trial court erred in denying his CPL § 330.30 motion because "Blauvelt's identification came about at the 'deliberate direction of the State' and was not a 'spontaneous and unplanned encounter.'" Pet. at 5-7; see also Petitioner's Reply Memorandum of Law Answering Respondent's Opposition to Petitioner's Writ of Habeas Corpus ("Pet. Reply Memo."), at 7-8.

N.Y.C.P.L. § 710.30(1)(b) provides, "[w]henever the people intend to offer at a trial... testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the

[2] Exh. 24 is the trial court's opinion. It sets forth that petitioner received and/or submitted copies of the affidavits, letters, and trial transcripts that form the basis of his claims prior to, during, and after the trial.

defendant a notice of such intention, specifying the evidence intended to be offered." The trial court ruled that Blauvelt made no identification of petitioner. Exh. 14 at 5. Subsequently, the Appellate Division, Second Department affirmed petitioner's judgment of conviction, noting that petitioner's claim that the people were required to provide him with notice of Blauvelt's identification testimony is meritless. Exh. 28 at 2. The court further stated that no notice was required because Blauvelt did not identify petitioner. Id. (citing People v. Goodwine, 46 AD3d 702, 703 [2007]).

Petitioner avers that the state courts' findings were in error. A trial court's alleged breach of a state law, however, is not cognizable in a federal habeas proceeding. See Estelle, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Accordingly, it is not within the authority of this Court to re-examine the state courts' assessment that no suppression hearing was required because Blauvelt had not performed an out-of-court pretrial identification within the meaning of CPL § 710.30(1). See Espinal v. Duncan, No. 00 Civ. 4844, 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4, 2000) (dismissing habeas claims based on CPL § 710.30).

Moreover, petitioner does not possess a guaranteed right to an advance notice of identification testimony under the Constitution. See Roberts v. Scully, 875 F. Supp. 182, 191 (S.D.N.Y. 1995), aff'd, Roberts v. Scully, 71 F.3d 406 (2nd Cir. 1995) (violation of CPL § 710.30 does not "reflect a claim of constitutional magnitude," so that any error is not cognizable on a habeas review). Thus, a violation of CPL § 710.30 does not give

rise to a constitutional violation. See Dotson v. Ercole, No. 06 Civ. 7823, 2009 WL 1615997, at *2 (S.D.N.Y. June 9, 2009) ("Even if the admission of the testimony at issue did contravene CPL § 710.30(1), such an admission does not constitute a constitutional violation."). As such, petitioner's claim that the prosecution's introduction of Blauvelt's alleged identification violated CPL § 710.30 is not cognizable on a habeas review.

Accordingly, I respectfully recommend that petitioner's claim be denied.

(ii) Claims of Insufficient Trial Evidence And Verdict Against The Weight of The Evidence

As his second ground for seeking habeas relief, petitioner avers that the trial evidence was insufficient to sustain a conviction and that the verdict was against the weight of the evidence. Pet. at 7-8. In actuality, this ground for habeas relief is two separate claims: (1) that his conviction was against the weight of the evidence and (2) that the trial evidence was legally insufficient to sustain a conviction. The availability of federal habeas relief varies for these claims.

Petitioner's claim that his conviction was against the weight of the evidence is not cognizable on habeas review. See Douglas v. Portuondo, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) ("A federal habeas court cannot address 'weight of the evidence' claims because a challenge to a verdict based on the weight of the evidence is different from one based on the sufficiency of the evidence ... [T]he 'weight of the evidence' argument is a pure state law claim...."). Therefore, I recommend that habeas relief on this ground should be denied.

Petitioner's other claim that the evidence in support of the verdict was legally insufficient, is cognizable on habeas review. See Jackson v. Virginia, 443 U.S. 307, 324 (1979). However, because the state courts adjudicated this claim on its merits, habeas

relief is available if petitioner shows that the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1). "In evaluating whether the evidence [was] sufficient [to sustain a conviction, the court] must view the evidence in the light most favorable to the prosecution." Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir.1997). The court must uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

Petitioner argues that the prosecution "did not prove the crimes of burglary and robbery and there is no rational trier of facts which could have found petitioner guilty beyond a reasonable doubt." Pet. Reply Memo. at 12. Petitioner further argues that Watkins' testimony was the most damaging evidence against petitioner; Watkins' testimony was incredible as a matter of law and self-serving; and that if the Court was to set aside Watkins' testimony, the evidence left is insufficient to sustain a conviction. Pet. at 8; Pet. Reply Memo. at 12-14. These assertions are without merit.

As to petitioner's argument, that Watkins' testimony was self-serving and incredible as a matter of law, the issue of a witness's credibility is one that is properly left to the jury's fact-finding discretion. See Anderson v. City of Bessemer, 470 U.S. 564, 575 (1985) (stating that finder of fact is in unique position to determine witness credibility); United States v. Gallo–Roman, 816 F.2d 76, 82 (2d Cir. 1987); Dorrian v. Caldor Corp., No. 94 Civ. 7376, 1997 WL 16054, at *2 (S.D.N.Y. Jan. 16, 1997), aff'd, 152 F.3d 917 (2nd Cir. 1998). As such, petitioner's claim regarding the credibility of the victims' testimony must fail.

In any event, the Court has reviewed the trial transcripts and finds that evidence adduced at trial was sufficient to find petitioner guilty of the accused crimes. In addition to the "damaging" testimony of co-defendant Watkins, see Trial Transcript ("Tr."), at 1735-1861[3], the trial evidence supported the elements of the crimes of which petitioner was accused. On March 29, 2001, three individuals forcefully entered the home of Reid and Hamiel. Tr. at 655-57; see also Resp't Aff., Exh. 27 at 6. The individuals who were identified as wearing green clothes; dark clothes; red and black clothes; masks; and gloves were armed with two guns and a 16-inch s hook crow bar. Tr. at 656, 772-73, 775, 777, 968, 969, 971. The intruder in the green clothes was armed with a revolver. Tr. at 775, 969. The intruders pointed the guns at Reid, Hamiel, and Blauvelt while asking about money. Tr. at 969-70, 971. After searching through the apartment, the intruders left with a safe containing $2,300, a set of keys to the apartment, Blauvelt's cell phone, two 2-way pagers, an antique shotgun, and $10 from Reid's wallet. Tr. at 663, 665, 668, 771, 774, 889-90. One of the intruders' voices sounded familiar to Reid and Hamiel, who at the time could not remember the owner of the voice. Tr. at 662, 666, 730, 794-95. After the intruders left, Blauvelt and Hamiel followed them from the apartment at Hyde Park and a chase ensued. Tr. at 781-93. Subsequent to the chase, Hamiel recognized the Suburban as belonging to petitioner. Tr. at 793 (testifying that petitioner aka "Duty" had a suburban with its lights in the grill as opposed to on the top of the vehicle, similar to the intruders' car); Tr. at 795 ("But later on down the line it hit me once I added everything up. Like oh the grill, the voice."); Tr. at 858, 883. Additionally, Blauvelt wrote down the license plate, which was matched to petitioner's car. Tr. at 784-85, 795. During the chase, Blauvelt saw the occupants of the car wearing the same

[3] Hereinafter, all citations to " Tr. at ___" unless otherwise noted, refer to the trial transcripts.

outfits that were worn by the intruders. Tr. at 981. The chase ended at Tubman Terrace, where Hamiel and Blauvelt watched the Suburban until the arrival of the police. Tr. at 781-93, 803-805. While awaiting the arrival of the police, Hamiel and Blauvelt observed the third intruder exit the vehicle and walk away. Tr. at 804. However, they did not observe any other individual enter or leave the vehicle. Tr. at 941. The police arrived and arrested petitioner and Watkins—the occupants of the vehicle. Tr. at 805, 807. At the time of the arrest, Hamiel observed police arrest petitioner aka "Duty", who was wearing the same green clothes as one of the intruders. Tr. at 805-807, 942, 943. Back at the police station, petitioner's clothes were taken for identification purposes, placed into evidence, and subsequently introduced in trial. Tr. at 62, 730. Hamiel and Blauvelt identified the green clothes as the same ones worn by the intruder. Tr. at 806-807. Moreover, both Reid and Hamiel identified the 'familiar' voice as belonging to petitioner. Tr. at 795, 883.

Simply stated, a habeas petitioner bears a very heavy burden when challenging his conviction on the basis of sufficiency of the evidence. <u>See</u> <u>Einaugler</u>, 109 F.3d at 840. Petitioner has not met this burden.

Accordingly, I respectfully recommend that this claim should be dismissed.

(iii) <u>Claim of Denial of The Constitutional Right to a Fair Trial</u>

Petitioner argues that he was denied the constitutional right to a fair trial because "the inadequacy of Watkins' disbarred attorney contributed to [his conviction]." Pet. at 8. Petitioner further asserts that the alleged error by Watkins' attorney, Donald Roth ("Atty. Roth"), was not harmless because "there [was] a reasonable possibility that the probability of perjured testimony contributed to [his] conviction"; and that "the cumulative

effect of Roth's error and those of the trial court denied [him] a fair trial, even if they were non-constitutional in nature." Id. at 9. Petitioner raised this claim in his appeal to the Second Department. The court summarily concluded that the contention was without merit. Exh. 28 at 2.

Here, petitioner has not shown any factual basis for what constitutes the alleged error nor has he shown that any prejudice as a result of Atty. Roth's alleged errors entitles him to habeas relief. Petitioner makes the unsupported bare allegation that the alleged error by Atty. Roth was not harmless because "there [was] a reasonable possibility that the probability of perjured testimony contributed to [his] conviction." See Pet. at 9. In any event, the record indicates that petitioner received effective representation by his counsel during the trial. Petitioner has not set forth a factual basis to support his argument that he was denied a fair trial due to the acts of Watkins' subsequently disbarred attorney.

Accordingly, I respectfully recommend that habeas relief should be denied on this ground.

(iv) New Evidence Claim

As his fifth ground for habeas relief, petitioner argues that "new evidence has been discovered since the entry of a judgment based on a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is [of] such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant, provided that a motion based upon such grounds must be made with due diligence after the discovery of such alleged new evidence." Pet. at 10. In support of this

assertion, petitioner characterizes Atty. Roth's February 2004 conviction for witness tampering as new evidence that Atty. Roth tampered with witnesses during petitioner's trial. Id. at 11. Petitioner has not set forth any factual basis whatsoever to support said claim.

Accordingly, I respectfully recommend that this claim should be dismissed.

## IV. CONCLUSION

For the reasons stated above, I respectfully recommend that the Court deny Williams' *pro se* petition for a writ of habeas corpus in its entirety.[4]

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b)(3) of the Rules governing § 2254 proceedings, the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Rule 11 of the Rules governing § 2254 proceedings; Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

---

[4] Copies of unreported opinions available only on electronic databases are attached hereto. Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated: July 1, 2013
White Plains, New York

**Respectfully Submitted,**

George A. Yanthis

GEORGE A. YANTHIS, U.S.M.J.